# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ALI GARBA,

                              Petitioner,

v.

WAUKESHA COUNTY CIRCUIT COURT,

                              Respondent.

Case No. 17-CV-244-JPS

**ORDER**

**1.**      **INTRODUCTION**

On April 1, 2015, Petitioner Ali Garba ("Garba") was convicted by a Waukesha County jury of one count of driving while intoxicated ("OWI") and one count of driving with a prohibited alcohol concentration ("PAC"). The PAC charge was dismissed on the state's motion and the trial court entered judgment on the OWI offense. That same day, the trial court imposed a sentence of six months' imprisonment. Garba pursued an unsuccessful appeal which concluded on February 13, 2017. Garba then filed the instant petition for a writ of habeas corpus on February 23, 2017. (Docket #1). In accordance with the Court's briefing schedule, Garba submitted a brief in support of his petition on May 28, 2017. (Docket #14). Respondent opposed the petition on August 2, 2017. (Docket #17). Garba offered a reply on September 1, 2017. (Docket #18). For the reasons explained below, Garba's petition must be denied.

**2.**      **BACKGROUND**

In its opinion denying Garba's appeal, the Court of Appeals summarized the relevant facts:

Garba was pulled over for a traffic violation in the City of Waukesha. The officer administered, and Garba failed, a series of field sobriety tests. The officer arrested Garba and took him to a hospital whereupon Garba consented to a blood draw. The test results revealed Garba's blood alcohol concentration was .206g/100mL. The State charged Garba with [OWI] and [PAC]—both third offenses.

The Wisconsin State Laboratory of Hygiene tested Garba's blood using a method called headspace gas chromatography. The laboratory tests each blood sample twice in separate vials. To summarize, the test involves placing a blood sample in a long column where the blood is carried by pressurized gas and separated into its component substances. The individual substances then escape at different times and are measured by means of flame detection. A flame ignites any alcohol present in a blood sample as it escapes the column; the strength of the flame is recorded and provides a measurement. These results are then plotted on a graph—a chromatogram—and indicate the alcohol concentration in the sample.

The day Garba's blood was tested, several chromatograms from test vials of others indicated a series of so-called "jagged humps." These jagged humps—visible as a series of peaks in some of the chromatograms—appear on the graph/chromatogram before any signal should be detected. In other words, the chromatograms showed readings before the carrier gas had time to carry the sample through the column. Blood samples for the same person would sometimes display jagged humps in one test vial but not in the other. The cause of these jagged humps remains unknown. However, the laboratory calibrated the testing equipment daily and monitored its performance throughout the testing day. Additionally, although jagged humps appeared in chromatograms before and after Garba's, his results contained none.

Seeking to undermine the accuracy and reliability of his results, Garba consulted two expert witnesses—Jimmie Valentine and Janine Arvizu—and sought to introduce their

testimony at trial. Valentine is a pharmacology professor and Arvizu is a certified quality auditor. Both experts opined that the presence of the jagged humps on some chromatograms created reliability issues with all of the results. According to their testimony at the motion hearing, the jagged humps should not be in the results, and the lab should have conducted a thorough analysis to determine what caused the anomalies. In the absence of an explanation, the experts maintained that none of the results could be trusted even though individual tests may or may not have been accurate.

The experts did, however, candidly admit a level of uncertainty in their opinions. Arvizu admitted that the machines were calibrated daily to determine at what point in the test the ethanol was separated from the sample. Because the jagged humps appeared on the chromatograms before the results for alcohol, Arvizu granted "in that respect it would not directly interfere with an ethanol determination." Arvizu conceded that she observed no inconsistencies in the alcohol readings between two test vials of the same blood sample even where one result showed a jagged hump and the other did not. She simply could not say whether the jagged humps produced a false positive or negative, or whether the humps had any effect whatsoever on the accuracy of the test. Valentine similarly admitted that the laboratory conducted controls and standards testing every ten samples, and the results were within the accepted tolerances on the day the laboratory tested Garba's blood. He too admitted he could not say to a reasonable degree of scientific certainty that Garba's test results were either accurate or inaccurate. Finally, both experts conceded that no jagged humps were present in Garba's blood test.

On the State's motion, the circuit court excluded the experts' testimony, reasoning it was not the product of reliable principles and methods, and any probative valued was outweighed by the danger of unfair prejudice. Garba also challenged part of Wis JI—Criminal 2663, arguing that it created an unconstitutional presumption that the blood test was reliable. The circuit court rejected this argument and gave the instruction as written. Garba's case proceeded to trial

> before a jury, and the jury found him guilty of the OWI charge and the PAC charge. On the State's motion, the PAC charge was later dismissed.

*State of Wisconsin v. Ali Garba*, 888 N.W.2d 246, 2016 WL 5794346, at *1-2 (Wis. Ct. App. Oct. 5, 2016). As detailed below, the Court of Appeals affirmed the trial court in all respects. *Id.* at *2-7. The Wisconsin Supreme Court summarily denied Garba's petition for review. (Docket #1 at 57).

Garba's petition offers four grounds for relief based on alleged errors by the trial court. The first three relate to his desire to proffer expert testimony. First, he claims that the expert testimony was exculpatory and its exclusion violated his Sixth Amendment right to present a defense. *Id.* at 6-7. Second, in deciding to exclude that evidence, the court improperly imposed a burden on Garba to prove that his blood test was unreliable. *Id.* at 7. Third, Garba claims that exclusion of his experts' testimony violated his due process rights under the Fifth and Fourteenth Amendments. *Id.* at 8. The final ground for relief asserts that the jury was improperly instructed that the blood test was reliable. *Id.* at 9.

### 3. LEGAL STANDARD

State criminal convictions are generally considered final. Review may be had in federal court only on limited grounds. To obtain habeas relief from a state conviction, 28 U.S.C. § 2254(d)(1) (as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA")) requires the petitioner to show that the state court's decision on the merits of his constitutional claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Brown v. Payton*, 544 U.S. 133, 141 (2005). The burden of proof rests with the petitioner. *Cullen v. Pinholster*,

563 U.S. 170, 181 (2011). The relevant decision for this Court to review is that of the last state court to rule on the merits of the petitioner's claim. *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006).[1]

A state-court decision runs contrary to clearly established Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [those] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown*, 544 U.S. at 141. Similarly, a state court unreasonably applies clearly established Supreme Court precedent when it applies that precedent to the facts in an objectively unreasonable manner. *Id.*; *Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013).

The AEDPA undoubtedly mandates a deferential standard of review. The Supreme Court has "emphasized with rather unexpected vigor" the strict limits imposed by Congress on the authority of federal habeas courts to overturn state criminal convictions. *Price v. Thurmer*, 637 F.3d 831, 839 (7th Cir. 2011). It is not enough for the petitioner to prove the state courts were wrong; he must also prove they acted unreasonably. *Harrington v. Richter*, 562 U.S. 86, 101 (2005); *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014) ("An 'unreasonable application of' federal law means 'objectively unreasonable, not merely wrong; even 'clear error' will not suffice.'") (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)).

Indeed, the habeas petitioner must demonstrate that the state court decision is "so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme]

---

[1] As noted above, Garba's grounds for relief are directed at the trial court. The proper focus is, however, on the decision of the Court of Appeals, which was the final Wisconsin court to issue a reasoned opinion in his case.

Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508-09 (2013) (quoting *Harrington*, 562 U.S. at 102). The state court decisions must "be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002); *Hartjes v. Endicott*, 456 F.3d 786, 792 (7th Cir. 2006). As the Supreme Court has explained, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102. Indeed, Section 2254(d) stops just short of "imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *See id.* This is so because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102–103 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)).

**4. ANALYSIS**

Garba makes little attempt to distinguish between any of his grounds for relief. Further, his briefing lacks organization which would help clarify his arguments. Without guidance from him, the Court will begin by addressing his first three grounds for relief together, as each relates to the admissibility of his experts' testimony. The Court will then turn to the instructional issue.

**4.1 Exclusion of Expert Testimony**

The Sixth and Fourteenth Amendments afford Garba the right to "'a meaningful opportunity to present a complete defense.'" *Caffey v. Butler*, 802 F.3d 884, 895 (7th Cir. 2015) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). This right permits Garba to present relevant testimony and evidence, including expert testimony. *Id.* (citing *United States v. Scheffer*, 523 U.S. 303, 308 (1998)); *Johnson v. Bett*, 349 F.3d 1030, 1035 (7th Cir. 2003). The right is not absolute, however. It must "'bow to accommodate other

legitimate interests in the criminal trial process[,]' . . . [including] 'fairness and reliability in the ascertainment of guilt and innocence.'" *Simonson v. Hepp*, 549 F.3d 1101, 1106 (7th Cir. 2008) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295, 302 (1973)).

These interests are made manifest in, *inter alia*, evidentiary rules. States have "broad latitude to establish rules excluding evidence so long as the rules are not arbitrary or disproportionate to the purpose they are designed to serve." *Johnson*, 349 F.3d at 1035; *Scheffer*, 523 U.S. at 308. Such a rule is "unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused." *Scheffer*, 523 U.S. at 308. In those instances, "strict application of a state evidentiary rule must yield to the defendant's constitutional rights." *Caffey*, 802 F.3d at 895. The Seventh Circuit notes that "[r]ules that prohibit irrelevant or speculative evidence are kosher." *Simonson*, 549 F.3d at 1106.

The Court turns to the decision of the Court of Appeals applying these principles. The court held that exclusion of the experts' testimony was a proper exercise of the trial court's discretion. *Garba*, 2016 WL 5794346 at *3. In excluding the testimony, the trial court applied two evidentiary rules. The first is Wisconsin's equivalent of the *Daubert* standard. *Id.* The trial court determined that "[a]lthough the experts concluded the jagged humps rendered Garba's test results unreliable, . . . this conclusion was backed, not by evidence, but speculation in the absence of evidence." *Id.* at *4. In other words, "[n]either one of Mr. Garba's experts . . . could opine to a reasonable degree of scientific certainty that the results were inaccurate, or that the jagged hump phenomenon—which was not even present on Mr. Garba's test results—in any way impacted the test results on Mr. Garba's sample." *Id.* The trial court also found the evidence inadmissible under Wisconsin's

equivalent of Federal Rule of Evidence 403, which permits exclusion of evidence "if the court determines that its probative value is substantially outweighed by the danger of unfair prejudice or the risk that it will mislead or confuse the jury." *Id.* at *3 (citing Wis. Stat. § 904.03). In the trial court's view, "the testimony would invite the jury to speculate that Garba's test was unreliable despite the experts' inability to say whether the jagged humps had any effect at all on the test results." *Id.* at *4.

The Court of Appeals concluded that this was an appropriate exercise of the trial court's discretion. *Id.* The court explained:

> Garba complains that the trial court should not have substituted its judgment regarding the significance of the jagged humps for that of the experts. Quite the contrary, the gatekeeper function—ensuring the expert opinion testimony is sufficiently reliable—is precisely what the circuit court should be doing. Despite Garba's insistence otherwise, the court did not misunderstand the difference between accuracy and reliability. It concluded that the expert testimony was not sufficiently probative on the issues of accuracy and reliability.

*Id.* The Court of Appeals also dismissed Garba's concern about the presumption of reliability for the blood testing method used in his case, noting that "who bears the burden to prove the accuracy of test results has nothing to do with whether the expert testimony here ought to have been admitted." *Id.*

The Court of Appeals then arrived at the federal constitutional question: whether exclusion of the expert testimony violated Garba's right to present a defense. *Id.* at *5. The court applied a multi-factor test announced by the Wisconsin Supreme Court to address this very issue. *Id.*; *see State of Wisconsin v. St. George*, 643 N.W.2d 777, 789 (Wis. 2002). The dispositive factor in this instance was the danger of unfair prejudice which

outweighed the probative value of the testimony. *Garba*, 2016 WL 5794346 at *5. Like the trial court, the Court of Appeals found that

> the experts based their conclusions not on evidence, but on a lack of evidence. Neither could say whether the jagged humps had any effect whatsoever on the results. Despite regular testing showing the results were within tolerances, the experts nevertheless concluded the results could not be trusted for reasons they could not explain. The testimony would have encouraged the jury to improperly speculate that the results were somehow suspect, despite a lack of evidence so indicating.

*Id.*

Combining the relevant constitutional considerations, the Court of Appeals' ruling, and the standards outlined in the previous section, this Court is presented with a narrow question: did the Court of Appeals unreasonably apply clearly established United States Supreme Court precedent in affirming the exclusion of Garba's expert testimony?[2] Or, put

---

[2] In both his opening brief and the brief attached to his petition, Garba argues only that the Court of Appeals misapplied Supreme Court precedent pursuant to Section 2254(d)(1). *See* (Docket #1-2 at 4, 8-9, 11-12; Docket #14 at 8, 22, 25-27 (citing Section 2254(d)(1)). Nowhere in either document does Garba even mention the other ground for habeas relief: Section 2254(d)(2). Section 2254(d)(2) allows a federal court to grant habeas relief if the state court's adjudication of a constitutional claim was based upon an unreasonable determination of the facts in light of the evidence presented. Garba mentions Section 2254(d)(2) for the first time in his reply. (Docket #18 at 7-8). By failing to argue the point in his opening brief, Garba has waived it. *TAS Distrib. Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 630 (7th Cir. 2007) ("[I]t is well-settled that arguments first made in the reply brief are waived.").

Further, even if Garba had properly invoked Section 2254(d)(2), his position is woefully underdeveloped. The underlying state court findings of fact and credibility determinations against the petitioner are presumed correct. *Newman v. Harrington*, 726 F.3d 921, 928 (7th Cir. 2013). A petitioner overcomes that presumption only if he proves by clear and convincing evidence that those findings are wrong. 28 U.S.C. § 2254(e)(1); *Campbell*, 770 F.3d at 546. Garba's reply

differently, would all fairminded jurists agree that the Court of Appeals' decision conflicted with Supreme Court precedent? Garba makes almost no effort to grapple with this question. Instead, he begins his argument by briefly recounting the facts and holdings of a list of Supreme Court cases. (Docket #14 at 25-27) (citing, *inter alia*, *Chambers*, *Crane*, and *Scheffer*). He then analogizes his case to district and circuit court opinions which do not supply controlling authority for purposes of a Section 2254 petition. *Id.* at 27-29; *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir. 2006). Finally, the remaining bulk of Garba's arguments are presented without meaningfully relating them to the Supreme Court decisions previously listed. (Docket #14 at 30-37).

In fact, throughout the entirety of his briefing, Garba never once accuses the Court of Appeals of unreasonably applying a specific rule stated by the Supreme Court. Garba also fails to identify any of its conclusions as contrary to that reached by the Supreme Court on materially indistinguishable facts. Rather, he simply accuses the state court of wrongly applying general standards announced in Supreme Court precedents. Garba's strategic choice means that this Court must afford even more deference to the Court of Appeals:

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the

---

gestures towards Section 2254(d)(2), then continues on to repeat many of the arguments contained in his opening brief. (Docket #18 at 7-15). His only attempt to prove that the Court of Appeals made erroneous findings of fact is to quote the very same expert testimony considered and accepted by that court. Garba's true complaint is not with the court's factfinding, but rather how the court fit those facts into its analysis. *See Garba*, 2016 WL 5794346, at *5 (acknowledging the experts' testimony, but concluding that the testimony failed to address the material issue: whether Garba's results were inaccurate).

> range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

*Yarborough v. Alvarado*, 541 U.S. 652, 663-64 (2004) (citations and quotations omitted); *see also Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009).

The Court thus continues on to the question presented: whether the Court of Appeals unreasonably applied the general rules announced in the cases Garba cites. *See Gilbert v. McCulloch*, 776 F.3d 487, 491 (7th Cir. 2015). The Court cannot say that it did. Garba was entitled to present non-speculative evidence in his defense. The Court of Appeals determined that his experts' testimony was just that—speculation. Though both experts questioned the general reliability of the testing machines, neither could say that the jagged humps made Garba's test inaccurate, which was the only material issue. If the experts had testified at trial, and the jury had agreed with them, their agreement would have been based only on speculation, not evidence, that Garba's test results were inaccurate. In the Court's view, this determination is not an incorrect application of the cited precedent, much less an unreasonable one. *Chambers*, 410 U.S. at 295, 302; *Simonson*, 549 F.3d at 1106.

It appears that Garba simply wants to pose his arguments afresh to this Court, hoping that it will be the first to agree with him. The Court cannot consider such a position. *Woodford*, 537 U.S. at 25 (federal habeas court cannot simply "substitute[] its own judgment for that of the state

court"). As the Seventh Circuit recently explained in the context of exclusion of expert testimony:

> Keith invokes the generic "right to present a defense" rather than a concrete rule about expert testimony. Yet the Supreme Court has concluded that § 2254(d)(1) forbids framing the theory at such a high level of generality. *Nevada v. Jackson*, [569] U.S. [at 512] . . ., is particularly instructive, because a court of appeals proceeded exactly as Keith asks us to. A state court had excluded some evidence; the court of appeals issued a writ of habeas corpus after concluding that the state judiciary violated the right to present a defense; the Supreme Court reversed, observing that "[b]y framing our precedents at such a high level of generality, a lower federal court could transform even the most imaginative extension of existing case law into 'clearly established Federal law, as determined by the Supreme Court.'" [*Id.* (quoting 28 U.S.C. § 2254(d)(1)).] The right question, *Jackson* held, is whether decisions of the Supreme Court establish that the particular decision the state judiciary reached is forbidden. The Justices stated in *Jackson* that this meant decisions about the admissibility of the sort of evidence the defense had proffered.
>
> . . .
>
> That is equally so here. Keith does not identify any decision by the Supreme Court establishing that judges in non-capital criminal trials must admit expert evidence about the defendant's state of mind or history of being abused as a child. Section 2254(d)(1) therefore has not been satisfied.

*Keith v. Schaub*, 772 F.3d 451, 453-54 (7th Cir. 2014). Garba has pointed to no Supreme Court holding which forbids the Court of Appeals' conclusions. More precisely, Garba has not shown that fairminded jurists would unanimously agree with him. Habeas relief is therefore unavailable.

### 4.2    Jury Instruction

The Fourteenth Amendment's Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt

of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Conversely, this principle "prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime." *Francis v. Franklin*, 471 U.S. 307, 313 (1985). A jury instruction violates due process when it creates a mandatory presumption, namely where a jury must infer that the presumed fact is true if certain predicate facts are proven, as to a fact necessary to constitute the charged offense. *Id.* at 314.

The Court of Appeals identified this rule and applied it to Garba's case. *Garba*, 2016 WL 5794346 at *6. Garba was convicted of OWI, which requires proof that "(1) the defendant operated a motor vehicle on the highway, and (2) the defendant was under the influence of an intoxicant." *Id.* at *7 (citing Wis. Stat. § 346.63). The instruction in question provides, in pertinent part:

> The law recognizes that the testing device used in this case uses a scientifically sound method of measuring the alcohol concentration of an individual. The State is not required to prove the underlying scientific reliability of the method used by the testing device. However, the state is required to prove that the testing device was in proper working order and that it was correctly operated by a qualified person.

WIS JI—Criminal 2669.[3] Garba argued that the instruction creates a presumption that the blood test results are accurate. *Id.* at *6. The court

---

[3]Before the Wisconsin trial court and Court of Appeals, Garba leveled his challenge at WIS JI—Criminal 2663. *Garba*, 2016 WL 5794346 at *2, 6-7. For reasons he does not explain, Garba's petition for review before the Wisconsin Supreme Court changed the target to WIS JI—Criminal 2669. (Docket #13-4 at 22-26). He cites only to WIS JI—Criminal 2669 in his instant petition. (Docket #1 at 9). Both

disagreed, finding that "[t]he instruction only informs the jury that the *method* used for testing is recognized to be reliable. It contains no presumption as to the accuracy or reliability of a particular test or machine." *Id.* (emphasis in original).

The court further noted that Garba made no attempt to contest the reliability of the testing method, headspace gas chromatography. *Id.* at *7. The instruction left intact the state's burden to prove that the results were reliable, for instance by "demonstrating the machines were in proper working order and operated by a qualified technician." *Id.* Finally, the court held that any instructional error was harmless, given the nature of the evidence presented:

> Furthermore, the testing method is two steps removed from the real issue in Garba's case: impairment. The testing method is simply a way to determine BAC, which in turn is relevant evidence from which a jury may infer impairment. Finally, in closing arguments on the OWI charge, the State focused on Garba's inability to complete the field sobriety tests, not his BAC. The reliability of headspace gas chromatography simply was not at issue.

*Id.*

It was Garba's burden to prove that the Court of Appeals' application of federal precedent was not just wrong, but entirely unreasonable. He failed to do so. As before, Garba simply argues that the court's conclusion was wrong. The Court cannot agree with him even on that point. This Court concurs with those before it that the challenged language relates only to the testing method, not the test results. Garba says this does not matter, because "the test method creates the result [only] if the

---

instructions contain the same relevant language, however, so the Court will not hold this against him.

machinery is in proper working order." (Docket #18 at 21). This merely rehashes his prior argument, and it may be dispensed with on the same grounds; Garba cannot say that the machinery was malfunctioning in a material way. The salient issue is whether the test results were accurate, and neither his experts nor the jury instruction have anything meaningful to say on that point. Again, Garba cites only to general propositions in Supreme Court cases and does not analogize their facts to his. (Docket #14 at 22-24; Docket #18 at 20-21). The Court will not craft an appropriate habeas argument on his behalf.

5.  **CONCLUSION**

Garba's refusal to contend with the applicable standard of review reveals his use of this habeas proceeding as merely seeking at a "do-over" of the state court proceedings. This is not an appropriate basis upon which to seek habeas relief. The Court must, therefore, deny Garba's petition and dismiss this action with prejudice.

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), Garba must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted). As the Court discussed above, no reasonable jurists could debate whether Garba's motion has merit because he put forth so little effort to couch his arguments within this Court's limited posture for review. As a

consequence, the Court is compelled to deny a certificate of appealability as to Garba's motion.

Accordingly,

**IT IS ORDERED** that Petitioner's petition for a writ of habeas corpus (Docket #1) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability as to the Petitioner's petition be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 28th day of December, 2017.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge